UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NINA KAZAZIAN,                          )
                                        )
                    Plaintiff,          )
                                        )       No. 24-cv-10843
            v.                          )
                                        )       Judge April M. Perry
CNA FINANCIAL CORPORATION d/b/a         )
CONTINENTAL CASUALTY COMPANY            )
d/b/a CNA INSURANCE COMPANIES;          )
JEAN L. HAUBER; WILSON, ELSER,          )
MOSKOWITZ, EDELMAN & DICKER LLP;        )
JASON MELICHAR; and DR. LAURA           )
REIFFEL,                                )
                                        )
                    Defendants.         )
                                        )

## OPINION AND ORDER

Beginning in 2020, Nina Kazazian ("Plaintiff") faced a series of attorney disciplinary

proceedings in Colorado, where she had practiced since 1992. As a result of those proceedings,

Plaintiff was disbarred in 2023. *See People v. Kazazian*, 531 P.3d 1 (Colo. O.P.D.J. 2023).

Plaintiff subsequently brought this case against her malpractice insurance carrier and one of its

employees, as well as the law firm, lawyer, and expert hired by the carrier to defend Plaintiff

during the disciplinary proceedings. Specifically, Defendants in this case are Plaintiff's insurance

carrier CNA Financial Corporation d/b/a Continental Casualty Company d/b/a CNA Insurance

Companies ("CNA");[1] Jean L. Hauber, an employee of CNA; the law firm Wilson, Elser,

Moskowitz, Edelman & Dicker LLP ("Wilson Elser") and partner Jason Melichar, who CNA

---

[1] CNA contends that Plaintiff has sued the incorrect legal entity. Because the Court dismisses the case, it does not need to untangle the various corporate relationships or address which CNA legal entity would be the proper defendant.

retained for Plaintiff's defense; and Dr. Laura Reiffel, an expert retained for Plaintiff's defense (collectively with Wilson Elser and Melichar, "Counsel Defendants").

Defendants move to dismiss Plaintiff's claims on various grounds. All seek to dismiss the case for improper venue or under the doctrine of *forum non conveniens*. Defendants Melichar and Dr. Reiffel also seek dismissal for lack of personal jurisdiction. Multiple defendants also seek to dismiss certain of Plaintiff's counts for failure to state a claim under Rule 12(b)(6). While there are weighty challenges to the sufficiency of the complaint, the Court limits its analysis to the threshold issues of personal jurisdiction and venue, which are dispositive. As set forth in greater detail below, the Court finds that while it may have personal jurisdiction over all of the Defendants, the Northern District of Illinois is not the proper venue for this action. Accordingly, the case is dismissed.

## BACKGROUND

According to the complaint, Plaintiff is now a citizen of Wyoming who practiced law in Colorado from 1992 until 2023. Doc. 65 at 4. Beginning in 2020, Plaintiff faced a series of disciplinary proceedings brought by the Colorado Office of Attorney Regulation Counsel ("OARC") related to her practice of law. *Id*. at 14. The first proceeding was initiated in September 2020, and the disciplinary hearing was held in January 2023. *Id*. In May 2022, another petition was filed by OARC to prevent Plaintiff from practicing law due to an unspecified disability. *Id*.

At all relevant times, Plaintiff held a professional liability insurance policy issued by CNA. *Id.* at 9–13. Under Plaintiff's policy, CNA was to provide Plaintiff with counsel to defend her in disciplinary proceedings and reimburse her up to $50,000 in attorneys' fees and costs for her representation. *Id*. at 18–19. In June 2022, CNA retained the law firm Wilson Elser and its

Colorado-based partner Jason Melichar to represent Plaintiff in the Colorado disciplinary proceedings. *Id*. at 5–6, 15. Dr. Reiffel was also retained to produce an expert report for Plaintiff's defense, though no report was produced. *Id*. at 8, 15, 20.

CNA paid Counsel Defendants out of Plaintiff's policy. To receive payments, Counsel Defendants sent invoices and time records to CNA either by email or through electronic billing software. *Id*. at 7. CNA then reviewed the invoices and determined an approved payment amount. *Id*. at 5–6. This contrasted with the process that had been related to Plaintiff by Hauber, a CNA claims representative. Specifically, Hauber allegedly told Plaintiff that her policy dictated that payments from CNA be issued directly to Plaintiff to reimburse her for costs and fees associated with her representation, rather than being paid by CNA to retained service providers. *Id*. at 7.

While she was represented, Plaintiff never received invoices or statements from any Defendants. *Id*. at 7-8. Plaintiff instructed Hauber not to make payments to Dr. Reiffel because Dr. Reiffel had failed to deliver an expert report. *Id*. at 15. Plaintiff also told CNA not to make payments to Wilson Elser or Melichar until Plaintiff had a chance to personally review the bills and determine the authorized amounts. *Id*. at 16.

In March 2023, Plaintiff was disbarred in Colorado. *People v. Kazazian*, 531 P.3d 1 (Colo. O.P.D.J. 2023). In October 2024, Plaintiff filed suit in this court, bringing state law claims against CNA and Counsel Defendants for mishandling her defense and depleting her policy benefits. Doc. 1. Defendant Hauber was not named in Plaintiff's initial complaint. In January 2025, Defendants filed motions to dismiss, to which Plaintiff responded in February by amending her complaint. Doc. 65. Plaintiff's amended complaint added Hauber as a defendant

and also added a claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

The amended complaint alleges six counts. Count I is a RICO claim brought against all defendants. *Id*. at 16-18. The gravamen of this claim is that Counsel Defendants sent fraudulent billing records and invoices to CNA for work either not performed or not reasonably incurred for the purposes of representing Plaintiff in her Colorado disciplinary proceedings. Although brought against all defendants, Plaintiff alleges that CNA was a victim of the fraud scheme perpetrated by Counsel Defendants. Hauber's role, if any, in the supposed RICO scheme is unclear. Count II is a breach of contract claim brought against CNA and Hauber. Plaintiff alleges that CNA paid Counsel Defendants without securing Plaintiff's approval or providing her with an opportunity to review or contest expenses, as supposedly required under her policy. *Id*. at 19. Count III is a legal malpractice claim brought against Wilson Elser and Melichar, alleging various issues with the representation provided during the Colorado disciplinary proceedings. *Id*. at 21. Count IV is a bad faith claim against CNA premised largely on the same allegations underlying Count II, *i.e.*, that CNA mishandled Plaintiff's insurance benefits by hiring and then improperly disbursing payments to Counsel Defendants without Plaintiff's approval and despite her protests as to their incompetence. *Id*. at 25. Count V is an unjust enrichment claim brought against Counsel Defendants as to the payments they received from CNA for allegedly subpar work. *Id*. at 26. Count VI is a fraud claim brought against Counsel Defendants for allegedly misrepresenting that they could competently represent Plaintiff. *Id*. at 28.

## ANALYSIS

### I.    Personal Jurisdiction

Defendants Melichar and Dr. Reiffel seek dismissal of Plaintiff's claims against them for lack of personal jurisdiction. Once challenged, the plaintiff bears the burden of establishing personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). If a court rules on a defendant's motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In making this determination, the Court reads the complaint liberally and resolves factual disputes in the plaintiff's favor. *Greving*, 743 F.3d at 491.

Melichar and Dr. Reiffel argue that this Court lacks personal jurisdiction over them under the standard applied in diversity suits, which hinges on a defendant's contacts with the state in which the federal court sits. *See Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). However, Plaintiff also asserts a claim under RICO, thereby invoking federal question jurisdiction in addition to diversity jurisdiction. "In a case involving federal question jurisdiction, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (internal quotes and citation omitted). The Seventh Circuit has interpreted RICO, which allows for nationwide service of process for civil RICO claims, 18 U.S.C. § 1965(b), to allow personal jurisdiction over defendants alleged to have violated RICO anywhere in the United States. *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671–72 (7th Cir. 1987); *see also Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279, 1294 (7th Cir. 1992) (when applying national law, "the relevant

5

contacts [for personal jurisdiction purposes] are the contacts between the defendant and the sovereign's nation.").

The Court recognizes that multiple defendants have raised serious challenges to the sufficiency of Plaintiff's RICO claim, which is the sole basis for this Court's federal question jurisdiction. This raises the question of whether Plaintiff's RICO claim provides a colorable basis for federal question jurisdiction, as jurisdiction under 28 U.S.C. § 1331 may not be invoked by a claim that "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 681 (7th Cir. 2014) (internal quotation omitted). Indeed, if the Court were to proceed to the merits of Defendants' 12(b)(6) motions, the Court would likely dismiss the RICO claim for failing to properly allege a RICO enterprise. That said, the Court would also allow Plaintiff to amend her complaint, and as for the jurisdictional question, "[w]hen it comes to invoking federal question jurisdiction, the bar is low." *Id*. Accordingly, at this time the Court finds that there is a possibility it would have personal jurisdiction over Defendants Melichar and Dr. Reiffel. As is discussed further below, venue poses the biggest challenge for Plaintiff, and therefore an amended complaint will not be allowed—at least not by this Court.

## II. Venue

The Court considers next whether venue is proper in the Northern District of Illinois. Under Rule 12(b)(3), a defendant may move for dismissal of an action filed in an improper venue. FED. R. CIV. P. 12(B)(3). Once challenged, the plaintiff bears the burden of establishing that venue is proper. *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981). In deciding a Rule 12(b)(3) motion, "a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its

decision." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). If venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Venue is governed by 28 U.S.C. § 1391(b), which provides that venue for an action is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine Const. Co. Inc. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 56 (2013). If it does not, "venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id*. Venue is only available under the third paragraph of Section 1391(b) if there is no judicial district where venue is proper under Sections 1391(b)(1) or 1391(b)(2). *Id*. at 56–57 (third paragraph "provides a fallback option" where "no other venue is proper").

In this case, the amended complaint alleges that Defendants Melichar and Dr. Reiffel are domiciled in Colorado. Doc. 65 at 3. Because two of the defendants are not residents of Illinois, venue is not proper here under 28 U.S.C. § 1391(b)(1). Nor is venue proper here based upon 28 U.S.C. § 1391(b)(3), which can only be invoked when there is no district in which a substantial part of the events or omissions giving rise to the claim occurred. That leaves Plaintiff only 28 U.S.C. § 1391(b)(2), if she can demonstrate that a "substantial part of the events" giving rise to her claims occurred in the Northern District of Illinois.

7

The Seventh Circuit has not articulated a test for determining when venue is proper under Section 1391(b)(2). Other Circuits interpreting the section have described the "substantiality" question to be "more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005); *see also Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) ("substantial part" analysis looks at acts and omissions with "a close nexus to the wrong"). Congress provided for venue in the place of "residence of the defendants or to a place which may be more convenient to the litigants … or to the witnesses who are to testify in the case." *Leroy v. Great W. United Corp.,* 443 U.S. 173, 185 (1979) (quoting S.Rep.No.1752, 89th Cong., 2d Sess. 3 (1966)). As such, the Court views "substantial part" analysis as informed by concerns regarding the "availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)." *Id.*

Plaintiff's claims fall into two categories. In the first category, Plaintiff seeks recovery against Counsel Defendants because they were paid despite the alleged inadequacy of their efforts to defend Plaintiff in her Colorado disciplinary proceedings. These claims include Plaintiff's legal malpractice claim against Wilson Elser and Melichar (Count III) and her unjust enrichment and fraud claims against Counsel Defendants (Counts V and VI). Plaintiff's RICO claim (Count I) also falls in this category, insofar as Plaintiff identifies wiring of fraudulent invoices and records sent by Counsel Defendants as predicate acts. In the second category of claims, Plaintiff seeks to collect against CNA and Hauber (Counts II and IV) alleging that CNA improperly hired and made payments to the Counsel Defendants without giving Plaintiff an opportunity to review or approve any billed expenses.

Having considered all of Plaintiff's allegations, the Court concludes that the Northern District of Illinois is not the proper venue to litigate this action. Starting with the first category of claims (Counts I, III, V, and VI), no substantial part of the events or omissions involving Plaintiff's attorney disciplinary proceedings occurred in Illinois. Plaintiff alleges that Counsel Defendants, two-thirds of whom reside in Colorado, provided her incompetent representation in a Colorado administrative proceeding.[2] To the extent Counsel Defendants misrepresented the substance of their work in fraudulent invoices, those documents were authored in Colorado and supposedly misrepresented the substance of work performed (or not performed) in Colorado. To prosecute these claims, Plaintiff would need to depose witnesses and obtain records located in Colorado, not the Northern District of Illinois. Accordingly, the Court has no trouble concluding that all acts or omissions with a close nexus to these claims occurred outside of the Northern District of Illinois.

Plaintiff's second category of claims against CNA and Hauber is a closer call, but not by much. To determine proper venue in a breach of contract action, courts in this district consider factors including "where the conduct underlying the breach occurred and where performance under the contract was to take place." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F.Supp.3d 870, 877 (N.D. Ill. 2015) (internal citation omitted). Plaintiff asserts that her claims are substantially connected to Illinois because CNA executed the policy in Illinois and because Plaintiff corresponded with CNA through Hauber, an Illinois-based employee. However, the conduct that is alleged to constitute the breach (*i.e.*, the payment of attorney and expert defense

---

[2] For instance, Plaintiff asserts that Dr. Reiffel "did not participate in Plaintiff's defense in any action in Colorado … did not timely (or otherwise) complete an expert report … did not testify at any proceeding [nor] provide any other services in connection with Plaintiff's disability and disciplinary proceedings." Doc. 100 at 9.

costs) occurred in Colorado. Plaintiff contends that this was a breach because proper contract performance would have entailed the invoices and payments being sent to her. At the time, both Plaintiff and her law firm (the named insured) were located in Colorado. Furthermore, Plaintiff's asserted damages associated with these claims rest on the premise that Counsel Defendants were incompetent and provided an inadequate defense. *See*, *e.g.*, Doc. 65 at 19 (alleging damages relating to insufficient funds "to secure adequate legal representation and expert testimony); *id*. at 25 (same). Thus, although some events and communications related to the claims may have occurred in this district, the breach occurred in Colorado, performance should have occurred in Colorado, and injury was sustained entirely in Colorado. Based upon this, Colorado is the only judicial district where a substantial part of the events occurred.

In response to Defendants' venue arguments, Plaintiff contends that substantiality is satisfied because billing records, invoices, and other communications were emailed or wired to this judicial district, and that CNA's payments flowed therefrom.[3] The Court disagrees that this is enough to be considered "substantial." A defendant's communications to or from a judicial district only form a substantial part of the underlying claims when there is a "sufficient relationship between the communication and the cause of action." *Master Tech Prods., Inc. v. Smith*, 181 F.Supp.2d 910, 913 (N.D. Ill. 2002). Incidental communications will not do. *Compare id.* at 914 (telephone calls divulging confidential product information not incidental to RICO suit alleging scheme to develop competing product using stolen information) *with Pfeiffer v. Insty Prints*, 1993 WL 443403, at *2 (N.D. Ill. Oct. 29, 1993) (in breach of contract action, no

---

[3] Plaintiff cites *Estate of Moore v. Dixon*, 460 F.Supp.2d 931, 936 (E.D. Wis. 2006) for the principle that only a portion of events need occur in a state to satisfy venue requirements. Perhaps, but *Dixon* still follows the principle that for substantiality purposes only acts that have a "close nexus" to Plaintiff's claims may be considered. *Id*. (internal citations omitted).

venue based on telephone calls to and from judicial district not related to performance or breach of contract). At best, Plaintiff has alleged only incidental communications from CNA, which do not affect the legal analysis as to whether a breach of contract occurred.[4]

It is true that courts in this district have sometimes found venue proper where Illinois-based plaintiffs received fraudulent communications from out-of-state defendants. *See, e.g., Jackson v. N'Genuity Enters., Co.*, 2014 WL 4269448, at *6 (N.D. Ill. Aug. 28, 2014) (Arizona defendant sent false and misleading materials to Illinois-based plaintiff); *Mercantile Cap. Partners v. Agenzia Sports, Inc.*, 2005 WL 351926, at *5 (N.D. Ill. Feb. 10, 2005) (Minnesota defendant sent false documents to Illinois plaintiff). But CNA, the recipient of the allegedly fraudulent invoices, is not a plaintiff, and Plaintiff herself has no connection to Illinois. Moreover, Plaintiff has alleged that the expense and billing records were fraudulent because Counsel Defendants misrepresented the substance of work performed for her in Colorado. To prove these invoices and records were fabricated, Plaintiff would need to discover what the Counsel Defendants did or did not do in Colorado. If such evidence exists, it exists where the representation took place, not where invoices happened to be emailed or payments happened to be issued.[5]

---

[4] For example, Plantiff contends that Hauber, who was in Illinois, told Plaintiff that the attorney fees would be paid directly to Plaintiff. Doc. 65 at 7. But Hauber's *ex post facto* interpretation of the insurance policy language is not relevant in a breach of contract action. *See, e.g., Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987) (holding that a "defendant's subjective understanding of the terms of the contract is immaterial").

[5] The Seventh Circuit has cautioned that the district where emails are read means very little, at least for the purposes of personal jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (explaining that an email "does not exist in any location at all [but] bounces from one server to another … and winds up wherever the recipient happens to be"). By the same logic, the Court is skeptical that venue becomes proper in Illinois simply because emails misrepresenting acts occurring in Colorado reached a recipient that happened to do business in Illinois.

For these reasons, the Court concludes that venue would be proper in a federal or state court in Colorado, but not in the Northern District of Illinois. The next question is whether to dismiss Plaintiff's case or transfer it to another court. When venue is improper, the Court may transfer a case to somewhere venue is proper rather than dismiss it, if doing so is "in the interest of justice." 28 U.S.C. § 1406(a). Transfers under this section are within the "broad discretion" of the district court. *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). The interests of justice are served where a plaintiff makes the honest mistake of filing suit in the wrong district and the statute of limitations has run, such that dismissal rather than transfer would result in the plaintiff losing a substantial part of her cause of action. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). But harsh results are not enough on their own to require transfer, especially where a filing mistake is "elementary" and "impose[s] costs on opposing parties and on the judicial system." *Cote*, 796 F.2d at 985; *see also Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 608 (7th Cir. 2003) (failure to transfer, despite running of statute of limitations, not abuse of discretion where plaintiff that filed in wrong judicial district was sophisticated party and there was "nothing obscure" about the proper venue).

With these considerations in mind, the Court declines to transfer Plaintiff's case and dismisses it instead. By her own description, Plaintiff was a "highly rated" attorney with more than three decades of legal experience. Doc. 65 at 4. The venue determination in this case is not particularly complex, and a lawyer with Plaintiff's sophistication surely knew that Colorado was the proper place to press her claims. As both parties have noted, Plaintiff has been barred from litigating *pro se* in Colorado state court, *see GHP Horwath, P.C. v. Kazazian*, 543 P.3d 1035 (Colo. 2024), and the Court believes this is why she did not bring her case in the most obvious place. But Plaintiff still had the option to obtain an attorney to bring her case in Colorado. And,

12

no such ban applies in the U.S. District Court for the District of Colorado. Nor is the Court persuaded by Plaintiff's argument that the statute of limitations has run on some of her claims. Plaintiff's RICO claim, to the extent she can amend to state it properly, has a four-year statute of limitations, *Rotella v. Wood*, 528 U.S. 549, 553 (2000), and thus is not time barred. Even if dismissal would result in Plaintiff losing some of her claims due to the statute of limitations, an argument that is discussed in more detail below, that alone is not a basis to transfer the case rather than dismissing it. This is especially true given that Defendants' venue concerns were raised previously, and Plaintiff took a calculated risk by amending the complaint and continuing her suit here.[6] Moreover, Plaintiff has made it clear that she wants nothing whatsoever to do with the state of Colorado, asserting that she moved to Wyoming to avoid Colorado and that forcing her to litigate there would be akin to requiring the victim of a crime "to move in with the perpetrator." Doc. 101 at 14–15. Given the strong aversion Plaintiff has to litigating in Colorado, the Court would not presume to transfer the case there.

### III. *Forum non conveniens*

Defendants also seek dismissal of Plaintiff's claims under the doctrine of *forum non conveniens*. Although the Court's venue analysis resolves the case, the Court finds that even if venue were proper in the Northern District of Illinois, the doctrine of *forum non conveniens* would apply.

---

[6] By the Court's rough calculation, the statute of limitations on Plaintiff's claims would have begun to run in March 2023, when Plaintiff's disciplinary proceeding was terminated against her. Defendants' first motion to dismiss for improper venue was filed in January 2025, Doc. 56, providing Plaintiff notice of the potential venue problem in advance of even the shortest statute of limitations that she claims may apply in this case. *See* Doc. 101 at 12-13; *see Morrison v. Goff*, 91 P.3d 1050, 1055 (Colo. 2004) (attorney malpractice statute of limitations runs two years after the plaintiff learns of the injury and its cause).

"The doctrine of *forum non conveniens* … empowers a court to dismiss a suit when litigating in that court as opposed to an alternative forum unreasonably burdens the defendant." *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 357 (7th Cir. 2022). The doctrine "is an exceptional one that a court must use sparingly." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). But "[w]hen a plaintiff's choice is not his home forum … the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." *Deb*, 832 F.3d at 806. Plaintiff resides in Wyoming, not Illinois, and so for the purpose of applying the doctrine here, the Court will not put much weight on the fact that Plaintiff has chosen the Northern District of Illinois as her preferred forum.

To determine whether *forum non conveniens* dismissal is appropriate, "a court first must determine if an alternative and adequate forum is available and then go on to balance the interests of the various participants." *Id.* at 807. Determining whether an alternative forum exists is a "two-part inquiry involving availability and adequacy." *Id.* "[A]n alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction." *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 957 (7th Cir. 2007). A forum is adequate if it "provides some potential avenue for redress for the subject matter of the dispute," even if it does not provide legal remedies "as comprehensive or as favorable" as might be brought in the plaintiff's chosen forum. *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009).

Even if an alternative and adequate forum is available, the Court will only dismiss under the doctrine if public and private interest factors favor dismissal. *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). Private interest factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. Public interest factors include: "the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id*.

The Court begins with availability of an alternative forum. *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997) ("As a practical matter, it makes little sense to broach the subject of *forum non conveniens* unless an adequate alternative forum is available to hear the case."). Defendants identify the U.S. District Court for the District of Colorado as an available alternative forum. As discussed, one of Plaintiff's claims is brought under RICO, which allows for nationwide service of process and personal jurisdiction over parties anywhere in the United States. *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671–72 (7th Cir. 1987). Moreover, two of the five defendants reside in Colorado, and the remaining defendants have acknowledged that they would be amenable to process there. *See* Doc. 70 at 13 (CNA); Doc. 73 at 12 (Wilson Elser); Doc. 94 at 5 (Hauber). Accordingly, there are no service of process or jurisdictional issues if Plaintiff were to litigate the case in Colorado.

Plaintiff responds by asserting that "[e]ven if Defendants consent to service of process and personal jurisdiction in another state court, this Plaintiff does not." *See* Doc. 100 at 13. This assertion does not render Colorado unavailable. Crediting Plaintiff's argument would eviscerate the doctrine of *forum non conveniens*, insofar as it would allow any plaintiff to defeat availability by asserting their refusal to proceed anywhere other than the forum of their choosing. Accordingly, the Court finds the U.S. District of Colorado to be an available forum.

Turning to adequacy, Plaintiff's first argument is that the U.S. District of Colorado cannot provide her with an adequate remedy because the statute of limitations has run on her claims. *See* Doc. 101 at 12–13. It is true that a forum may be inadequate if the plaintiff's claims would be time barred in the alternate forum. *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010). But that principle does not apply here because Plaintiff has numerous claims that are not time barred and provide her avenues for redress on the subject matter of the dispute. Plaintiff does not argue that her RICO claim (Count I) is time barred. *Rotella v. Wood*, 528 U.S. 549, 553 (2000) (four-year statute of limitations for civil RICO actions). And she asserts that the events giving rise to her claims of breach of contract (Count II), unjust enrichment (Count V), and fraud (Count VI)—all of which have three-year limitation periods—occurred between July 2022 and January 2023, which would still allow for a timely suit. Doc. 101 at 13.[7]

That leaves Plaintiff's bad faith and malpractice claims, both of which Plaintiff argues have two-year statutes of limitations. The first problem with Plaintiff's argument is that she has argued that Illinois law controls her dispute with CNA. Doc. 107 at 2. Under Illinois law, there is

---

[7] As already discussed, the Colorado hearing board issued its decision finding against Plaintiff on March 3, 2023. *People v. Kazazian*, 531 P.3d 1 (O.P.D.J. 2023). It is plausible that the statute of limitations did not begin to run until this injury occurred, which would extend the three-year statute of limitations to March 2026.

a ten-year statute of limitations for actions by insureds against their insurers based on an insurance policy, not the two-year statute of limitations that Plaintiff claims. *See Country Preferred Ins. Co. v. Whitehead*, 979 N.E.2d 35, 43 (Ill. 2012). Thus, the bad faith claim is timely. With respect to her legal malpractice action, the Court agrees that the statute of limitations is likely two years from "the time the client discovers, or through the use of reasonable diligence should have discovered, the negligent act of the attorney." *Jacobson v. Shine*, 859 P.2d 911, 913 (Colo App. 1993). As such, the Court believes it is possible that the statute of limitations ran for this claim in March 2025, two years from when Plaintiff would have reasonably known that her insurance benefits had been spent on subpar legal services. That said, an alternative forum can be adequate even if it "does not provide the same range of remedies" as the plaintiff's chosen forum, so long as "the parties will not be deprived of *all* remedies or treated unfairly." *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (emphasis added, internal citation omitted). Accordingly, dismissal of Plaintiff's claims under the doctrine of *forum non conveniens* would be proper even if it meant the loss of one of her six claims, given the survival of the majority of her claims and the fact that those claims involve the same factual allegations and seek recovery for the same injury. For example, Plaintiff's RICO claim is premised on the same allegations underlying the legal malpractice claim and would allow for treble damages against Defendants.[8]

---

[8] The Court has expressed skepticism that Plaintiff's RICO claim would survive a 12(b)(6) analysis, but also that Plaintiff would be allowed to amend it to attempt to state a viable claim. If Plaintiff were not able to state a valid RICO claim, this Court would lose its basis for personal jurisdiction over Defendants Melichar and Dr. Reiffel. In other words, either Plaintiff's RICO claim is viable and she has no basis to complain about the inadequacy of the District of Colorado, or Plaintiff's RICO claim is not viable and the District of Colorado is the only place that would have personal jurisdiction over Defendants Melichar and Dr. Reiffel.

Separate from her statute of limitations concerns, Plaintiff asserts a litany of other reasons why she cannot litigate her claims in the U.S. District Court for the District of Colorado. The Court rejects Plaintiff's argument that Colorado is inadequate because she is banned from filing *pro se*, as that ban only extends to Colorado's state courts. *See GHP Horwath, P.C. v. Kazazian*, 543 P.3d 1035, 1053 (Colo. 2024) (enjoining Plaintiff from proceeding *pro se* in "the state courts of Colorado"). The Court also rejects Plaintiff's arguments pertaining to the District of Colorado's approach to *pro se* filing. Plaintiff contends that under that court's local rules, *pro se* cases are reviewed by a magistrate judge and may be summarily dismissed and that this process lacks transparency and may be unconstitutional. However, such dismissals are appealable on their merits. *See, e.g.*, *Thompson v. Lengerich*, 798 F. App'x 204, 207 (10th Cir. 2019) (considering on the merits the District of Colorado's dismissal of *pro se* plaintiff's claims as frivolous). As such, litigating *pro se* in the District of Colorado will not deprive Plaintiff of the right to have her claims heard in court. The Court also rejects Plaintiff's speculative argument that "in all likelihood," Melichar or "one of his consiglieres" exercises improper influence over the District of Colorado's Pro Se Division, Doc. 102 at 6, as "generalized, anecdotal complaints of corruption are not enough" to find a forum inadequate. *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009) (collecting cases).

Finally, the Court arrives at Plaintiff's contention that the highly public nature of her disbarment (and subsequent ban from *pro se* practice) in Colorado has rendered her a *persona non grata* in the state, tainted the jury pool in the event any of her claims make it to trial, and frustrated her efforts to secure counsel in the state. In particular, Plaintiff takes issue with the fact that the District of Colorado's Civil Pro Bono Panel—a program of volunteer attorneys willing to represent individuals of limited financial means—is comprised of Colorado-based attorneys that

would refuse to take on her case due to her reputation in the state. According to Plaintiff, this makes the District of Colorado an inadequate forum.

The Court is not aware of any case where a litigant has attacked the adequacy of a forum based on her unique features, rather than the forum's characteristics. *See*, *e.g. Stroitelstvo Bulgaria*, 589 F.3d at 421–22 (considering types of recognized legal claims and perception of public corruption in Bulgarian courts); *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (considering availability of causes of action in Saudi Arabian courts); *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 957–58 (7th Cir. 2007) (differing causation standards in tort cases considered for adequacy inquiry). Absent any directly applicable caselaw, the Court notes that *forums non conveniens* inquiry is not about whether the forum is perfect, but rather whether it is fundamentally flawed. *Cf. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981); *see also Deb v. SIRVA, Inc.*, 832 F.3d 800, 807 (7th Cir. 2016) ("A forum is not inadequate merely because the law in the foreign jurisdiction is less favorable to the party opposing dismissal"). Boiled down, Plaintiff's assertions seem more about her litigation odds and less about the ability of the legal system in Colorado to deliver a merits-based outcome. As such, the Court rejects Plaintiff's arguments as to the inadequacy of the District of Colorado.

Having determined the District of Colorado to be an adequate and available alternative forum, the Court considers the private and public interest factors. The weighing of the private factors favors dismissal. The bulk of evidence and witnesses most relevant to Plaintiff's core claims are in Colorado, where two of three Counsel Defendants reside and received payments from CNA despite their alleged failure to provide Plaintiff with an adequate legal defense. As such, most discovery will take place in Colorado, and transporting evidence and witnesses to Chicago—to which Plaintiff, proceeding *pro se*, would also have to travel from Wyoming—

19

would create significant expense for all of the individual (*i.e.*, non-corporate) parties. *See Stroitelstvo Bulgaria*, 589 F.3d at 425 (dismissal favored where transporting evidence and witnesses to plaintiff's chosen forum would make litigation "unnecessarily expensive").

The public interest factors also lean towards dismissal. Defendants correctly note that the Northern District of Illinois has a substantially higher caseload per judge than the District of Colorado.[9] More importantly, this dispute is fundamentally a Colorado issue. Taking her well-pleaded allegations as true, Plaintiff has described the failure of a Colorado attorney and expert to provide adequate defense to a once well-regarded Colorado lawyer during her Colorado disciplinary proceeding. The consequence of this botched defense was her disbarment from practice in Colorado, which drove Plaintiff out of the state. If this case reaches trial, a Colorado jury has more of an interest in the outcome than an Illinois jury.

In summary, the Court concludes that the balance of private and public interest factors favors dismissing this case so it may be resolved in Colorado, an available and adequate alternative forum. Thus, even if venue were proper in the Northern District of Illinois, the Court would in its discretion dismiss Plaintiff's case under the doctrine of *forum non conveniens*.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims are dismissed under Rule 12(b)(3) for improper venue. Even if venue were proper, the Court would dismiss Plaintiff's claims under the

---

[9] *See* UNITED STATES DISTRICT COURTS – NATIONAL JUDICIAL CASELOAD PROFILE 47, 79 (2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025.pdf (showing 1,049 pending cases per judgeship in the Northern District of Illinois as of March 31, 2025, and 573 for the District of Colorado).

doctrine of *forum non conveniens*. For these reasons, the Court declines to reach the arguments as to failure to state a claim under Rule 12(b)(6).


Dated: July 18, 2025

_____
APRIL M. PERRY
United States District Judge