UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Nina Kazazian, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 24-cv-10843 |
| v. ) | |
| ) | Judge April M. Perry |
| CNA Financial Corporation, d/b/a ) | |
| Continental Casualty Company d/b/a ) | |
| CNA Insurance Companies; Jean L. Hauber; ) | |
| Wilson, Elser, Moskowitz, Edelman & ) | |
| Dicker LLP; Jason Melichar; and ) | |
| Dr. Laura Reiffel, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff Nina Kazazian's Rule 59(e) motion to alter or amend the judgment entered in this case on July 18, 2025. Doc. 119. In the Court's July 18, 2025 Opinion and Order ("July 18 Opinion"), the Court found that venue was improper in this district and dismissed Plaintiff's case against Defendants CNA Financial Corporation d/b/a Continental Casualty Company d/b/a CNA Insurance Companies ("CNA"); Jean Hauber, a CNA employee; law firm Wilson, Elser, Moskowitz, Edelman & Dicker LLP ("Wilson Elser") and firm partner Jason Melichar; and Dr. Laura Reiffel. *See* Doc. 117. In her Rule 59(e) motion, Plaintiff argues that this Court should vacate its judgment because it applied the wrong venue standard, erroneously resolved factual disputes against Plaintiff, did not allow Plaintiff to obtain Rule 26 disclosures, and did not consider the RICO venue provision. Doc. 119. Plaintiff also argued in her initial motion that the Court should have transferred the case under § 1406 rather than

dismissing it, Doc. 119 at 8–9, but the Court notes that Plaintiff has later argued that a "transfer under § 1406 would constitute manifest error[] of law." Doc. 128 at 13. For the reasons that follow, the Court grants Plaintiff's motion in part, and denies it in part.

## BACKGROUND

The Court presumes familiarity with its July 18 Opinion and therefore does not recite the factual background of this case in full. *See* Doc. 117. At a high level, this case arises from Plaintiff's 2023 disbarment from the practice of law pursuant to attorney disciplinary proceedings brought by the Colorado Office of Attorney Regulation Counsel. *Id*. at 2. Plaintiff was represented in those disciplinary proceedings by Wilson Elser and Wilson Elser partner Jason Melichar. *Id*. at 2-3. Dr. Reiffel was a retained expert. All were engaged and compensated by CNA, Plaintiff's malpractice insurance carrier. *Id*. In October 2024, Plaintiff sued CNA, Wilson Elser, Melichar, and Dr. Reiffel in this district raising state law claims related to the alleged mishandling of her defense and depletion of her policy benefits. Doc. 1. Plaintiff amended her complaint in February 2025 to add Hauber as a defendant and to add a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Doc. 65.

## ANALYSIS

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend judgment. The moving party must "clearly establish grounds for relief" under Rule 59(e). *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 953 (7th Cir. 2013). Those grounds for relief include only manifest errors of law or fact or newly discovered material evidence. *Id*. at 954. "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quotes omitted).

Plaintiff contends that the Court committed multiple manifest errors of law, including (I) applying an overly restrictive standard for determining venue under Section 1391(b)(2); (II) making adverse and improper factual findings; (III) denying Plaintiff the opportunity to receive Rule 26(a)(1) disclosures; and (IV) not considering the RICO venue provision. Each argument is addressed in detail below.

I.     **Venue Standard**

Plaintiff argues that the Court erred by using a "close nexus" standard when deciding venue. As explained in the July 18 Opinion, the Seventh Circuit has not set out a framework for analyzing venue under Section 1391(b)(2), and so the Court looked to definitions used in other Circuits when interpreting "substantial part of the events or omissions giving rise to the claim." Doc. 117 at 8; *see also Liberty Mut. Fire Ins. Co. v. Clayton*, 33 F.4th 442, 449 (7th Cir. 2022) ("In the absence of controlling precedent, the district court may look to out of circuit precedent as persuasive authority."). In so doing, the Court noted that in the Second Circuit, courts undertake a "qualitative … inquiry" of the "overall nature of the plaintiff's claims." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005). The Court also noted that in the Eleventh Circuit, courts look at acts and omissions with "a close nexus" to the wrong. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). To be clear, what this Court ultimately determined was not that the close nexus framework was controlling, but instead that the complaint did not establish venue under *any* Circuit's standard, and that "no substantial part of the events or omissions involving Plaintiff's attorney disciplinary proceedings occurred in Illinois." Doc. 117 at 9. The Court's interpretation tracked the requirements of Section 1391(b)(2), and therefore did not constitute a manifest error of law.

3

## II. Factual Findings

Plaintiff contends that the Court failed to accept the truth of the allegations in her complaint by discounting her allegations of Illinois-based conduct and by considering evidence outside of the complaint. Neither occurred here. As is made clear by the factual citations contained in the July 18 Opinion, the Court relied solely on the complaint's allegations, which the Court accepted as true, to conclude Colorado was the only state where a substantial part of events giving rise to Plaintiff's claims occurred. Because the Court did not rely on any facts outside of Plaintiff's complaint, *Deb v. SIRVA, Inc.*, 832 F.3d 800 (7th Cir. 2016), which Plaintiff cites for the principle that a court's consideration of venue evidence beyond the pleadings entitles her to discovery and a hearing, is not applicable to this case. Nor did the Court resolve factual disputes against Plaintiff. Rather, the Court made the legal determination that the complaint's allegations of Defendants' Illinois-based activities were not a substantial part of the events giving rise to Plaintiff's claims. *See, e.g.*, Doc. 117 at 10 ("Plaintiff contends that substantiality is satisfied because billing records, invoices, and other communications were emailed or wired to this judicial district, and that CNA's payments flowed therefore. The Court disagrees that this is enough to be considered 'substantial.'").[1] The Court finds it notable that Plaintiff does not mention a single disputed fact that was resolved against her in the more than

---

[1] Plaintiff also relies on a supposed 2019 decision from the Eleventh Circuit titled "Murdoch v. Rosenberg & Assocs., LLC," for the citation, "Where venue facts are disputed, courts must allow the plaintiff to submit evidence." Doc. 119 at 2. The Court has been unable to identify such a case based on the case name or reporter details supplied, though given Plaintiff's *pro se* status, the Court will consider this citation error inadvertent. There is a district court decision, *Murdoch v. Rosenberg & Assocs., LLC*, 875 F.Supp.2d 6 (D.D.C. 2012) that touches on venue principles, but that case does not contain the quoted passage. Moreover, the case notes that while factual conflicts must be resolved in the plaintiff's favor, courts "need not treat the plaintiff's legal conclusions with similar deference." *Id.* at 9.

forty pages of briefing she has submitted. Doc. 119, Doc. 124, Doc. 129.[2] Plaintiff's disagreement with the outcome of this case does not constitute manifest error.

### III. Rule 26(a) Disclosures

Plaintiff also argues that because Rule 26(a) requires initial and mandatory disclosures, it was error for the Court to rule on the motions to dismiss before those disclosures were made. The Court rejects this argument, as it is not the least bit clear that such disclosures would have resulted in Plaintiff obtaining the documents she claims she needed. Under Rule 26(a)(1)(ii), a party must provide a copy or description of "documents … that the disclosing party has in its possession, custody, or control and may use to support *its claims or defenses*." FED. R. CIV. P. 26(a)(1)(ii) (emphasis added). Rule 26 does not compel disclosure of all documents that might be relevant to the opposing party. Plaintiff has not explained, much less made a showing, that the documents she wanted—the Wilson Elser/CNA engagement contract, billing agreements, payment records, and communications regarding claims handling—would have been used to support any claim or defense by Defendants such that they would have constituted Rule 26(a)(1) materials. But even if these documents did support Defendants' claims or defenses, the most Plaintiff would have been entitled to under Rule 26(a)(1) is a description of those documents; she had no entitlement under Rule 26(a)(1) to the documents themselves. For these reasons, Plaintiff

---

[2] Plaintiff claims, without citation, that the Court made a "finding that payments from CNA to Wilson Elser were processed in Colorado." Doc. 119 at 6. The Court made no such finding. What the Court found was that the complaint alleged a breach of contract based upon individuals who were in Colorado receiving payments that Plaintiff, also in Colorado, should have received. Doc. 117 at 10. Under such facts, the Court drew the legal conclusion that the contract performance, contract breach, and injury all occurred in Colorado. *Id*.

has not demonstrated that the Rule 26(a)(1)(ii) disclosures would have had any bearing on the outcome of this case.³

### IV. RICO Venue Statute

Plaintiff also points for the first time to 18 U.S.C. § 1965(a), a special venue provision in RICO, as a basis for proper venue in this district. A party may not use a Rule 59(e) motion "to raise novel legal theories that a party had the ability to address in the first instance." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). An "argument raised for the first time in a Rule 59(e) motion is waived." *Estremera v. U.S.*, 442 F.3d 580, 587 (7th Cir. 2006). But setting aside Plaintiff's waiver, even if Plaintiff had timely argued venue based on 18 U.S.C. § 1965(a), the Court would have still dismissed her complaint, though on different grounds.

Section 1965(a) of RICO provides that "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Given the Court's previous conclusion that venue does not lie in this district under 28 U.S.C. § 1391(b)(2), the Court understands Plaintiff's current argument to be that the Court should have instead looked to 18 U.S.C. § 1965(a) for venue over the RICO claim.

As an initial matter, the Court notes that "[v]enue must be properly laid as to each defendant," even when RICO supplies the basis for venue. *Payne v. Mktg. Showcase, Inc.*, 602

---

³ At various points, Plaintiff seems to argue that she was entitled to other discovery prior to the resolution of the motion to dismiss. The Court notes that Plaintiff did not ever request discovery in order to respond to the venue dispute, a fact that Plaintiff acknowledges in her briefing. Doc. 124 at 5 ("Defendants contend Plaintiff improperly sought 'discovery' before venue could be decided. This misstates the record. Plaintiff did not demand discovery."). Thus, it is inaccurate to state that the Court denied venue-related discovery. Doc. 119 at 8. Similarly inaccurate is Plaintiff's assertion that she was prevented from providing affidavits or other venue-related evidence. *Id.* She never asked or attempted to do either.

6

F.Supp. 656, 658 (N.D. Ill. 1985); *see also* 14D C. Wright & A. Miller, *Federal Practice and Procedure*, § 3808 (4th ed. 2020). Venue must also be established as to each individual claim. *VMS/PCA Ltd. P'ship v. PCA Partners Ltd. P'ship*, 727 F.Supp. 1167, 1173 (N.D. Ill. 1989); *see also Beattie v. U.S.*, 756 F.2d 91, 100 (D.C. Cir. 1984) (noting "general rule … that venue must be established as to each separate cause of action"), *overruled on other grounds by Smith v. U.S.*, 507 U.S. 195 (1993); *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978). On these principles, the Court concludes that even if Section 1965(a) permits venue here as to Plaintiff's RICO claim, it does not follow that RICO establishes venue in this district over her claims under state law, which are not "civil action[s] … under [RICO]." 18 U.S.C. § 1965(a).[4] Nor can Plaintiff rely on RICO to venue her claims here against defendants who are not charged in the RICO claim. *See id.* (allowing venue only against "any person" who is charged in a RICO

---

[4] Plaintiff's Rule 59(e) motion argues only that the Court did not address the RICO venue standard. Doc. 119 at 7. Plaintiff does not argue that this provision would have provided venue over any claim other than her RICO claim and therefore has waived any argument that the Court should apply "pendent venue" principles to this case. District courts in this Circuit and elsewhere sometimes apply what is known as "pendent venue" in order to "hear claims as to which venue may be lacking if those claims arise out of a common nuclear of operative facts with claims as to which venue is proper." *PCA Partners*, 727 F.Supp. at 1174. The decision to exercise pendent venue is "discretionary," based on the same considerations that "support the exercise of pendent jurisdiction—judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants" as well as venue-specific considerations such as the "convenience of litigants and witnesses." *Beattie*, 756 F.2d at 103.

The Seventh Circuit has neither endorsed nor rejected the doctrine of pendent venue. But even assuming it exists, the Court would not choose to exercise it here. True, Plaintiff's RICO and state law claims share some common operative facts, most notably the allegedly fraudulent invoices submitted by Counsel Defendants. But even so, the Court finds—consistent with its July 18 Opinion—that the bulk of key witnesses and evidence bearing on her state law claims (as well as her RICO claims, for that matter) are in Colorado, and that Plaintiff's dispute concerns events and interests related to Colorado, not Illinois. Therefore, had Plaintiff raised pendent venue as an argument, the Court would have found that neither convenience nor fairness support extension of venue here over Plaintiff's state law claims from RICO's special venue provision.

claim). Finally, Plaintiff cannot rely on the RICO statute to provide venue for any defendants who do not reside, are not found, have no agents, or do not transact affairs in the district. *See id.*

To summarize: the Court already having found that 28 U.S.C. § 1391(b)(2) does not provide a statutory basis for venue of Count II (breach of contract), Count III (legal malpractice), Count IV (bad faith), Count V (unjust enrichment), or Count VI (fraud), the Court does not now conclude that 18 U.S.C. § 1965(a) provides a basis for venue over those counts. At best, 18 U.S.C. § 1965(a) provides venue only for Count I (RICO). And even then, Section 1965(a) does not provide venue for Defendant Reiffel, who does not reside in, cannot be found in, and has no agents or affairs in the Northern District of Illinois. Moreover, as is discussed further below, Section 1965(a) does not provide venue for CNA or Hauber, who cannot plausibly be alleged as RICO defendants.

This brings us to the largest issue with Plaintiff's current argument in support of RICO venue, which is that the RICO claim is not plausibly pled. In their earlier motions to dismiss, multiple defendants challenged the adequacy of Plaintiff's RICO claim under Rule 12(b)(6). Because the Court determined venue was improper in its July 18 Opinion, the Court declined to reach the merits, while noting that if it were to do so, the claim would likely be dismissed. Doc. 117 at 6. Now that Plaintiff has invoked RICO's special venue provision, however, this is as good a time as any for the Court to reach the merits of Plaintiff's RICO claim.

To state a RICO claim, Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (internal citation omitted). Plaintiff has not adequately alleged any of these elements.

8

The "first rule" of pleading a RICO claim is that the "plaintiff must identify the enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439–40 (7th Cir. 1990). A RICO enterprise is sometimes defined as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009). An enterprise has a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to continue to pursue the enterprise's purpose." *Id*. The enterprise must be separable from the pattern of racketeering activity and more than "a group of associated business that are operated in concert." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) (citations and quotes omitted). Thus, the mere "naming of a string of entities does not allege adequately an enterprise." *Id*. at 646. By that same logic, a run-of-the-mill commercial relationship—with each entity acting in its individual capacity in pursuit of its individual self-interest—does not a RICO enterprise make. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655–56 (7th Cir. 2015). More is required to allege that such a relationship constitutes a RICO enterprise, such as plausible allegations of an "unusual degree of economic interdependence among the entities" or that officials from separate companies involve themselves in the management and affairs of the other. *Id*. at 656.

Plaintiff has not plausibly alleged a RICO enterprise. Though she brings her RICO claim against all five defendants, she alleges no purpose shared among them. Indeed, Hauber does not feature in Plaintiff's RICO claim at all, and CNA is identified as the *victim*, rather than perpetrator, of alleged fraudulent acts of the Counsel Defendants. Plaintiff has also alleged nothing to suggest improper interdependence between CNA and Wilson Elser. The only allegation in the complaint regarding any enterprise is that "Defendants participated in the operation or management of an enterprise through a pattern of racketeering activity, as defined in

9

the RICO Act." Doc. 65 at 16. This is wholly conclusory, and legal conclusions are insufficient to plausibly plead a claim.

Beyond enterprise, Plaintiff also fails to plausibly allege the "conduct" element of a RICO claim, which requires allegations that defendants participated in "operation or management of the enterprise itself." *Richmond*, 52 F.3d at 646. Allegations that the defendants played "some part in directing" the business of the enterprise is critical to a viable RICO claim: "mere participation in the activities of the enterprise is insufficient." *Goren v. New Vision Int'l Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). Here, Plaintiff has not alleged any operational or management role played by any defendant in any RICO enterprise. The closest she comes is Melichar, who—as a partner in the law firm Wilson Elser—is alleged to have "participated in a partner's meeting" where Plaintiff's representation was discussed. Doc. 65 at 8. But Plaintiff has not alleged that Wilson Elser is itself an enterprise for RICO purposes, nor that any other defendants—Reiffel, CNA, or Hauber—played any managerial or operational role at Wilson Elser or in any other enterprise.

Plaintiff must also allege a pattern of racketeering activity, which has multiple requirements. To start, Plaintiff must allege at least "two predicate acts of racketeering committed within a ten-year time period." *Goren*, 156 F.3d at 728. Mail and wire fraud qualify as predicate acts under the statute, but must be alleged to the heightened pleading standard of Rule 9(b). *Id.* at 728–29. Plaintiff perhaps could plausibly allege two predicate acts through her allegations that Counsel Defendants' submission of fraudulent bills and information to obtain money from CNA constituted wire fraud, Doc. 65 at 16, though the current complaint does not contain the specificity required by Rule 9(b). But if these fraudulent bills and information sent with the intent to deceive CNA are the predicate acts, then CNA is indeed a victim and not a

RICO defendant. Thus, the predicate acts themselves demonstrate that RICO venue cannot lie as to CNA or Hauber.

Moving on to the pattern of racketeering, such a pattern must satisfy what is known as the "continuity plus relationship test," which looks at whether the "predicate acts [are] related to one another (the relationship prong) *and* pose a threat of continued criminal activity (the continuity prong)." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992), citing *H.J. Inc. v. Nw. Bell Telephone Co.*, 492 U.S. 229, 239 (1989). To evaluate continuity, courts look to factors including the "number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).

Applying *Morgan*, the Court finds Plaintiff's allegations fail the "continuity plus relationship test" on the continuity prong. Starting with duration, the time period over which the alleged predicate acts occurred is "perhaps the closest thing [the Seventh Circuit has] to a brightline continuity test" in that the duration must be longer than a few months. *Midwest Grinding*, 976 F.2d at 1024 (collecting cases and concluding a nine-month time period was not enough). The only reasonable inference here is that the alleged predicate acts of wire fraud all occurred between June 2022 (Wilson Elser's date of hire by CNA) and January 2023 (when the disciplinary hearing concluded and Plaintiff's legal representation by Wilson Elser ended). This seven-month period does not weigh in favor of a racketeering pattern. Moreover, the Seventh Circuit disfavors RICO claims arising solely on "many instances of mail and wire fraud." *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990). Here, the only predicate acts Plaintiff has alleged are multiple instances of mail and wire fraud. Doc. 65 at 17–18. And while Plaintiff also alleges that Wilson Elser publishes information about their skills and experience on the internet,

11

these alleged misrepresentations are not alleged with specificity, and even if they were, they likely qualify as puffing not actionable as fraud.

Turning to the factors of separate schemes and distinct injuries, the Court reads from the complaint at most a single scheme with a single injury. The scheme alleged is one that begins and ends with Counsel Defendants' submission of fraudulent invoices with respect to Plaintiff's disciplinary proceedings. Nothing in the complaint demonstrates a "threat of continued criminal activity" by the Counsel Defendants as to Plaintiff, CNA, or any other person or entity. *Midwest Grinding*, 976 F.2d at 1022. As for distinct injuries, while Plaintiff might argue that each instance of alleged false billing constitutes a standalone injury, the Seventh Circuit has rejected such an approach, holding instead that "injuries … stemming from a single contract were not the type of injuries which Congress intended to compensate via the civil provisions of RICO." *Vicom*, 20 F.3d at 782, citing *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1269 (7th Cir. 1990).

For these reasons, the Court concludes that Plaintiff has failed to state a plausible RICO claim, and vacates its prior judgment to the extent that Count I was dismissed for lack of venue. Count I is instead dismissed under Rule 12(b)(6). This dismissal is without prejudice, meaning Plaintiff can attempt to replead Count I if she believes she can state a plausible RICO claim consistent with the above guidance. However, the Court notes that when deciding whether to replead, Plaintiff should consider the following: First, even if Plaintiff could state a plausible RICO claim, she would not have any basis for venue over Defendant Reiffel, who according to the complaint has no contacts with the Northern District of Illinois other than having sent some

invoices and time records to CNA in connection with this case.[5] Second, CNA and Hauber are victims of the RICO scheme, and therefore not properly named as defendants. This means Plaintiff cannot achieve venue over CNA and Hauber based upon a RICO claim. Thus, even if Plaintiff were able to cure the many deficiencies noted above and plead a plausible RICO claim, at best, Plaintiff would only achieve venue over Wilson Elser and Melichar through Section 1965(a), and then only as to the RICO claim.

## CONCLUSION

For the foregoing reasons, the Court denies in part and grants in part Plaintiff's motion to alter or amend judgment. As to her RICO claim only, Plaintiff's motion is granted with respect to her request to vacate the dismissal of the claim on 12(b)(3) grounds, and the Court instead dismisses the RICO claim under Rule 12(b)(6). If Plaintiff believes she can state a plausible RICO claim as outlined above, she may file an amended complaint by December 23, 2025. The Court emphasizes that there is a very large gap between the current allegations and a plausible RICO claim. Moreover, Plaintiff's *pro se* status does not protect her from a motion for sanctions brought under Rule 11 to the extent she repleads a frivolous claim or one that is not supported by the evidence. *See Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990). The Court also reminds Plaintiff that despite her continued insistence that the other counts were dismissed

---

[5] For a defendant to "transact his affairs" in a district within the meaning of RICO's venue provision, there must be "substantial business activity … done within the forum with continuity of character.*" First Financial Leasing Corp. v. Hartge*, 671 F. Supp. 538, 542 (N.D. Ill. 1987*); see also Pincione v. D'Alfonso*, 506 Fed. Appx. 22, 24 (2d Cir. 2012) (noting that "transacts his affairs" in Section 1965 is synonymous with the Clayton Act's requirement that a party "transact business" in a venue, and that they both require "some amount of business continuity and certainly more than a few isolated and peripheral contacts with the particular judicial district."). Defendant Reiffel has submitted an affidavit that states that Dr. Reiffel is a neuropsychologist licensed to conduct business in Colorado, that she is not licensed in the state of Illinois, has never had any patients in Illinois, has never marketed to Illinois, has not traveled to Illinois, and owns no property here. Doc. 71-1. Plaintiff has not challenged these assertions.

13

with prejudice, dismissals for lack of venue are without prejudice, and Plaintiff is free to bring the entirety of her case in Colorado. The Court declines to itself transfer this case to Colorado because Plaintiff insists that a transfer would be a manifest error of law, Doc. 128 at 9, and the Court remains persuaded that transfer is not in the interests of justice, for all of the reasons previously discussed in the July 18 Opinion.

Dated: November 21, 2025

                                                  APRIL M. PERRY
                                                  United States District Judge